IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-531

Filed 20 June 2023

Mecklenburg County, No. 21-CVD-15161

LASHUNDA TILLMAN, Plaintiff,

v.

SASHA JENKINS, Defendant.

Appeal by Defendant from order entered 12 November 2021 by Judge Karen D. McCallum in Mecklenburg County District Court. Heard in the Court of Appeals 25 January 2023.

> *Wray Law Firm, PLLC, by Tiasha L. Wray and Gregory Hunt, for Defendant-Appellant.*
>
> *Offit Kurman, P.A., by Kyle A. Frost and K. Mitchell Kelling, for Plaintiff-Appellee.*

COLLINS, Judge.

Defendant-Mother appeals from an order granting "temporary care, custody and control" of her two minor children to Plaintiff-Grandmother, the children's paternal grandmother. Mother argues that the trial court erred by using the "best interest of the child" standard to award Grandmother custody without first finding that Mother was unfit or had acted inconsistently with her constitutionally protected status as the children's natural parent. Because the trial court's order was a permanent custody order and the trial court did not find that Mother was unfit or

had acted inconsistently with her constitutionally protected status, the trial court erred by using the "best interest of the child" standard to determine custody of the children. The order is vacated and the matter is remanded with instructions.

## I. Factual Background and Procedural History

Mother is the biological mother of two children who were born in 2012. Mother's former husband ("Father") was the biological father of the children. Mother and Father divorced in 2015 and entered into a parenting agreement in June 2016, whereby Father was awarded primary physical custody of the children and Mother was awarded visitation. In May 2020, Father was killed by a member of Mother's family. Grandmother filed a "Motion to Modify Child Custody, *Ex Parte* Motion for Emergency Custody[,] and Motion for Attorney's Fees" in July 2020.[1] The trial court entered an "Ex Parte Temporary Emergency Custody Order" on 28 July 2020, awarding temporary custody of the children to Grandmother, granting supervised visitation to Mother, and scheduling the matter for hearing on 5 August 2020.

After hearings on 5 August and 3 November 2020, the trial court entered an "Order for Supervised Visitation" in January 2021, finding, in relevant part:

> 8. Father was murdered by a member of [Mother's] family on May 23, 2020, while the minor children were present and witnessed the murder.
>
> . . . .
>
> 11. That after the murder Mother refused visitation to

[1] This pleading is not in the record on appeal but is referenced in various pleadings and orders.

Grandmother who practically raised the minor children since they were months old, and that this was not in the best interest of the minor children.

. . . .

14. That on August 5, 2020 [Grandmother's] *Ex Parte* Motion for Emergency Custody was heard by the court and this court finds that said emergency still exists.

15. The minor children have been through the trauma of witnessing their father's murder and Mother continues to put them in an environment where they are around family members who are constantly threatening the [G]randmother and other family members, and this is not in the best interest of the minor children.

Based on its findings, the trial court concluded that the parties were properly before the court and that the court had jurisdiction over the matter. Based on its findings and conclusions, the trial court ordered, in relevant part:

1. []Grandmother's *Ex Parte* Motion for Emergency Custody is GRANTED.

2. []Grandmother is awarded temporary physical and legal custody of the minor children.

3. []Mother is granted supervised visitation with Carolina Solutions every other week for a period of four (4) hours.

. . . .

15. That pending further orders of the court, the court retains jurisdiction over the parties for enforcement and/or modification of said Order hereto and of the subject matter herein.

At a hearing on 17 September 2021, the trial court dismissed Grandmother's

"Motion to Modify the Parenting Agreement that was entered on 23 June 2016."[2] Mother's attorney sent an email to individuals at the children's school, stating in part:

> We appeared in court this morning and the pending custody action [Grandmother] had against [Mother] were dismissed by the court. As such, there aren't any pending custody actions or any custody orders in effect. Given the recent change of events, we ask that you disregard any custody orders previously provided to you as they no longer have any legal effect. And, it is our expectation that the children be released to [Mother] upon request.

In response, Grandmother's attorney emailed the following message to individuals at the school: "All, No order dismissing [Grandmother's] action has been entered by the Court at this time. Please also be advised we are filing a Motion for Emergency custody shortly." After the hearing, Mother apparently went to pick up the children from school. That same day, Grandmother filed a new "Complaint for Child Custody and Child Support and Attorney's Fees[;] Motion for Ex Parte Emergency Custody and Attorney's Fees, or in the Alternative a Motion for Temporary Parenting Arrangements," seeking an emergency custody order granting her temporary exclusive care, custody, and control of the children or, should the court not grant emergency custody, temporary primary custody of the children.

---

[2] The record does not contain a "Motion to Modify the Parenting Agreement that was entered on 23 June 2016," an order dismissing the motion, or a transcript of the 17 September 2021 hearing. The motion is referenced in various pleadings and orders. It is assumed that the "Motion to Modify the Parenting Agreement" and the "Motion to Modify Child Custody" filed in July 2020, also not in the record, are the same motion. The 17 September 2021 hearing is referenced in Mother's counsel's email to the children's school and Grandmother's complaint filed on that date.

On 22 September 2021, the trial court entered a new "Ex Parte Temporary Emergency Custody Order," finding that "[Grandmother] alleges that Mother is mentally unstable and incapable of providing care for the minor child"; "Mother tried to remove the minor children from school"; and "[Grandmother] is concerned that Mother may flee the jurisdiction with the minor children." The trial court awarded Grandmother temporary care, custody, and control of the children and scheduled the matter for hearing on 30 September 2021. Mother answered Grandmother's complaint on 27 September 2021, denying Grandmother's material allegations, and moved to dismiss the complaint pursuant to North Carolina Rule of Civil Procedure 12(b)(6).

The matter came on for a review of emergency custody on 30 September 2021. At the hearing, the trial court heard only Grandmother's case-in-chief, which included testimony from Grandmother, one of the children's teachers, and the children's therapist. The trial court did not allow Mother to present evidence. At the close of Grandmother's case, Mother moved to dismiss Grandmother's claim for emergency custody, pursuant to North Carolina Rule of Civil Procedure 41(b). The trial court granted Mother's motion to dismiss "based on the fact that there is no emergency." However, the trial court announced that it was inclined to enter a temporary custody order. Mother objected on the ground that Grandmother presented no evidence challenging Mother's fitness as the children's natural parent. The trial court advised the parties to return for a hearing on 4 October 2021 "to

address the issue of whether or not the court had authority to enter a temporary custody order without considering or having any evidence regarding Mother's unfitness, or conduct in a manner inconsistent with Mother's parental right."

At the 4 October 2021 hearing, the trial court acknowledged that a permanent custody order would require the court to find that Mother had waived her constitutionally protected status but determined it had the authority to enter a temporary custody order pursuant to N.C. Gen. Stat. § 50-13.5(d)(2) without a showing that Mother had waived her constitutionally protected status. The trial court stated that it would deny Grandmother's motion for emergency custody, refrain from ruling on Grandmother's motion for a temporary parenting arrangement until a later hearing, and enter a temporary order continuing primary custody with Grandmother.[3]

Mother then inquired about scheduling a permanent custody hearing:

> [MOTHER]: [] When can we come back to be heard on permanent custody? How short are these temporary orders going to be in place if my client's constitutional rights are not going to be considered?
>
> THE COURT: Okay. So let's give a 90-day review.
>
> [MOTHER]: 90-day review for temporary? Or -- because, I mean, Your Honor, you know how Mecklenburg County temporary orders work. · And this last one was just in place -- an emergency order was in place for over a year. · So I

---

[3] The trial court noted that, because it determined no emergency existed, it would have to hear Grandmother's motion for a temporary parenting arrangement for Mother to put on evidence. Instead, the trial court entered its temporary order based solely on Grandmother's evidence during the emergency custody hearing.

guess my next question would be can we get on a trial calendar to be heard on permanent custody sooner than later?

. . . .

THE COURT: --- [W]e're going to have a 90-day review date, and then after that we'll set a custody date.

[MOTHER]: So we're looking at at least six months?

THE COURT: It's a school year. I'm not going to move them out of school ---

The trial court announced, "I will give them the traditional shared schedule for the holidays based on the CMS school schedule, or even year for one parent, odd for the other."

On 12 November 2021, the trial court entered a "Temporary Custody Order" finding:

> 12. At the September 30, 2021 emergency return hearing, the court heard evidence from [Grandmother], the minor children's teachers and their therapist.
>
> 13. At the close of [Grandmother's] evidence, counsel for Mother moved to dismiss [Grandmother's] claim for emergency custody pursuant to Rule 41(b).
>
> 14. The Court granted counsel's Rule 41 motion, but the Court was inclined to enter a temporary custody order, to which counsel for Mother objected on the grounds that [Grandmother] provided no evidence challenging Mother's fitness as required in actions brought by non-parents.
>
> . . . .
>
> 16. On October 4, 2021, after arguments from counsel, the Court found it had authority to enter a temporary custody order pursuant to N.C.G.S 50-13.5(d)(2) and that Plaintiff was not required to make a showing challenging Mother's protected status, but rather, the standard for the court's consideration was best interest.

- 7 -

17. Mother was not provided an opportunity to present any evidence or her case and chief.

The order denied Grandmother's claim for emergency custody, concluded that "[i]t is in the best interests of the minor children and would promote their general welfare, for their custody to be primarily with the [Grandmother], as hereinafter set out with more specificity[,]" and awarded Grandmother "temporary care, custody and control" of Mother's children. Mother was given visitation of the children weekly from Friday to Monday, Thanksgiving break in even years starting in 2022, Christmas break in 2021 and then half of Christmas break in subsequent years, Mother's Day, and spring break in even years. The order scheduled a "review hearing 90 days from the entry of this order on a date to be determined by the court." Mother appealed.

## II. Discussion

**A. Appellate Jurisdiction**

We first address this Court's jurisdiction to hear this appeal. "As a general rule, interlocutory orders are not immediately appealable." *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558, 681 S.E.2d 770, 773 (2009) (citation omitted). "An interlocutory order is one that does not determine the issues, but directs some further proceeding preliminary to a final decree." *Brewer v. Brewer*, 139 N.C. App. 222, 227, 533 S.E.2d 541, 546 (2000) (citation omitted). "A temporary child custody order is normally interlocutory and does not affect any substantial right which cannot be protected by timely appeal from the trial court's ultimate disposition on the merits."

*Sood v. Sood*, 222 N.C. App. 807, 809, 732 S.E.2d 603, 606 (2012) (citation omitted). However, the trial court's designation of a custody order as temporary is not sufficient to render the order interlocutory and not subject to appeal. *Brewer*, 139 N.C. App. at 228, 533 S.E.2d at 546. Rather, "whether an order is temporary or permanent in nature is a question of law, reviewed on appeal de novo." *Smith v. Barbour*, 195 N.C. App. 244, 249, 671 S.E.2d 578, 582 (2009) (citation omitted).

"A temporary order is not designed to remain in effect for extensive periods of time or indefinitely[.]" *LaValley v. LaValley*, 151 N.C. App. 290, 292 n.5, 564 S.E.2d 913, 915 n.5 (2002) (citation omitted). A "[t]emporary custody order[] resolve[s] the issue of a party's right to custody pending the resolution of a claim for permanent custody." *Brewer*, 139 N.C. App. at 228, 533 S.E.2d at 546 (citation omitted). Where "the trial court fails to state a 'clear and specific reconvening time' in its otherwise temporary order, it will be treated as a permanent one." *Maxwell v. Maxwell*, 212 N.C. App. 614, 618, 713 S.E.2d 489, 492 (2011). Furthermore, where an order states a reconvening time, but the time interval between the two hearings is not reasonably brief, the order will be treated as a permanent one. *See Brewer*, 139 N.C. App. at 228, 533 S.E.2d at 546 (holding that "a year is too long a period to be considered as 'reasonably brief,' in a case where there are no unresolved issues"). Whether the time interval between hearings is reasonably brief "must be addressed on a case-by-case basis." *LaValley*, 151 N.C. App. at 293 n.6, 564 S.E.2d at 915 n.6

Here, Grandmother was awarded temporary physical and legal custody of the

children on 28 July 2020. Grandmother retained temporary physical and legal custody by order entered in January 2021. Grandmother's motion to modify Mother's parenting agreement with Father was dismissed 17 September 2021, but Grandmother was again awarded temporary care, custody, and control of the children on 22 September 2021. The trial court entered yet another "Temporary Custody Order" on 12 November 2021, again awarding primary custody to Grandmother and establishing a shared holiday schedule designed to last indefinitely.

Although the order scheduled the matter "for a review hearing 90 days from the entry of this order on a date to be determined by the court[,]" the trial court informed the parties that the 90-day hearing was only to review the temporary custody arrangement, that "after that we'll set a custody date[,]" and that it was "not going to move [the children] out of school[.]"

Grandmother has now had "temporary" custody of Mother's children since 28 July 2020–almost three years. Two years passed between the entry of the initial temporary order and the potential date of a permanent custody hearing after the school year ended in the summer of 2022. The chronic temporary, and thus interlocutory, orders have evaded appellate review and avoided addressing whether Mother is unfit or has acted inconsistently with her parental rights. Furthermore, the "Temporary Custody Order" failed to state a clear and specific reconvening time for a permanent custody hearing.

For the foregoing reasons, the "Temporary Custody Order" was not temporary,

but was instead a permanent custody order. Accordingly, this Court has jurisdiction to hear Mother's appeal pursuant to N.C. Gen. Stat. § 7A-27(b)(2) as she appeals from a final order.

**B. Standing**

Mother first argues that Grandmother lacked standing to initiate a custody proceeding.

Whether a party has standing to initiate a custody proceeding is a question of law reviewed de novo. *Thomas v. Oxendine*, 280 N.C. App. 526, 531, 867 S.E.2d 728, 733 (2021). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Wellons v. White*, 229 N.C. App. 164, 173, 748 S.E.2d 709, 717 (2013) (quotation marks and citation omitted).

N.C. Gen. Stat. § 50-13.1(a) provides, "Any parent, relative, or other person . . . claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child[.]" N.C. Gen. Stat. § 50-13.1(a) (2021). The statute "grants grandparents the broad privilege to institute an action for custody . . . ." *Eakett v. Eakett*, 157 N.C. App. 550, 552, 579 S.E.2d 486, 488 (2003). "Although grandparents have the right to bring an initial suit for custody, they must still overcome the parents' constitutionally protected rights." *Thomas*, 280 N.C. App. at 531, 867 S.E.2d at 733 (quotation marks and citation omitted). Thus, to have standing to initiate a custody action against a parent, the grandparent must allege

the parent is "unfit or has engaged in conduct inconsistent with their parental status." *Id.* (citations omitted).

Here, Grandmother alleged the following:

> 24. Upon information and belief, Mother has not had stable housing, moving repeatedly, or staying with various family members, largely due to her inability to retain stable employment.
>
> 25. The minor children have been seeking therapy due to the sudden death of their father. The children's therapist . . . has indicated that they are flourishing in their current environment and they should maintain their current school life balance and routine. . . .
>
> 26. [Mother] did not support therapy for the minor children and upon information and belief would not abide by any recommendations regarding therapy for the minor children.
>
> 27. Upon information and belief, Mother is unable to physically and financially care for the minor children. Mother, by her own actions, has not provided a suitable environment that is conducive of the best interests and welfare of the minor children.
>
> 28. There is a substantial risk of serious physical and emotional injury to the minor children while in Mother's custody.
>
> . . . .
>
> 33. [Mother], by her own actions, has acted in a manner inconsistent with the constitutionally protected rights to parent the minor children with regard to the upbringing and care of the minor children.

Grandmother adequately alleged that Mother had acted inconsistently with her parental status. Accordingly, Grandmother had standing to initiate this action.

## C. Custody Determination

Mother next argues that the trial court erred when it applied the "best interest of the child" standard to determine custody of her children without first finding that Mother was unfit or had acted inconsistently with her constitutionally protected status as the children's natural parent.

Whether a trial court applied the correct legal standard to determine custody is a question of law reviewed de novo. *Blanchard v. Blanchard*, 279 N.C. App. 280, 284, 865 S.E.2d 693, 697 (2021).

In custody actions between a parent and nonparent, the parent's constitutionally protected right to make decisions concerning the care, custody, and control of their children must prevail unless the court finds that the parent is unfit or has acted inconsistently with their constitutionally protected status. *Price v. Howard*, 346 N.C. 68, 73, 484 S.E.2d 528, 531 (1997) (citation omitted). If a natural parent is not unfit or has not acted in a manner inconsistent with their constitutionally protected status, application of the "best interest of the child" standard in a custody dispute with a nonparent would offend the Due Process Clause. *Id.* at 79, 484 S.E.2d at 534 (citations omitted). Only if "such conduct is properly found by the trier of fact, based on evidence in the record, [should] custody [] be determined by the 'best interest of the child' test . . . ." *Id.* at 79, 484 S.E.2d at 535.

Here, the parties do not dispute that the trial court made no finding that Mother was unfit or had acted inconsistently with her constitutionally protected status as the children's natural parent prior to applying the best interest of the child

- 13 -

standard in its determination to grant Grandmother custody. The trial court acknowledged it would be required to find that Mother had waived her constitutionally protected status to enter a permanent order, but determined that it had the authority "to enter a temporary custody order pursuant to N.C.G.S. 50-13.5(d)(2)[,] and that [Grandmother] was not required to make a showing challenging Mother's protected status, but rather, the standard for the court's consideration was best interest." However, as discussed above, the trial court's "Temporary Custody Order" was a permanent order. Accordingly, the trial court was required to find Mother unfit or that her conduct was inconsistent with her constitutionally protected status before applying the "best interest of the child" standard to determine custody of the children. The trial court's failure to do so was error.

## III.  Conclusion

Because the trial court erred by applying the "best interest of the child" standard without first finding that Mother was unfit or had acted inconsistently with her constitutionally protected status as the children's natural parent, the trial court's order is vacated and the matter is remanded with instructions to the trial court to hold a permanent custody hearing and enter a permanent custody order within 60 days of the issuance of this opinion. Nothing herein shall be interpreted as preventing the trial court from entering a temporary custody order to govern the custody of the children pending the entry of the permanent custody order within the

next 60 days.

VACATED AND REMANDED WITH INSTRUCTIONS.

Judges ARROWOOD and WOOD concur.